IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,

                Plaintiff,

v.                                         CIVIL ACTION NO. 2:17-cv-02976

JOHN H. WELLFORD, III,

                Defendant.

MEMORANDUM OPINION AND ORDER

I.     Introduction

Pending before the court is the plaintiff's Motion for Summary Judgment [ECF No. 10]. The defendant has not responded. The Motion [ECF No. 10], which the court is construing as a motion for default judgment, is **GRANTED**.

II.    Background

On March 12, 2015, an engineered material arresting system ("EMAS") collapsed at Yeager Airport in Charleston, West Virginia. Pet. for Declaratory J. Ex. 1, at ¶¶ 19, 21 [ECF No. 1-1] ("Underlying Compl."). At the time, Theodore and Rebecca Carter lived near Yeager Airport. "Notwithstanding the fact that the [Carters'] home remained intact and undamaged . . . [Yeager] Airport, [John] Wellford and Corotoman demolished the [Carters'] home on March 13, 2015, stating some days or weeks later that an 'emergency' necessitated the demolition." *Id.* ¶ 48. The Carters

allege that Mr. Wellford, "was on the [Carters'] property and ordered the demolition of the [Carters'] home." *Id.* ¶ 16. The Carters allege that Mr. Wellford ordered that their home be demolished either on "the mistaken belief that [Yeager] Airport had purchased the Carters' home," *id.* ¶ 73, or in his role as agent for Corotoman with the intent that Corotoman purchase the property after demolition and condemnation, *id.* ¶ 82.

On January 30, 2017, the Carters filed an amended complaint against the Central Regional West Virginia Airport Authority ("Yeager Airport"), Corotoman, Inc., and John H. Wellford, III in the Circuit Court of Kanawha County, West Virginia. *Id.* ¶¶ 2–4. In the Complaint, the Carters seek to recover damages from the demolition of their home. *See id.* ¶ 16.

On March 13, 2015, the date that Mr. Wellford directed the demolition of the Carters' home, he was insured under two insurance policies provided by Erie Insurance Property & Casualty Company ("Erie"): (1) an Erie ExtraCover HomeProtector Insurance Policy, Policy No. Q26-5550008 ("HomeProtector Policy") [ECF No. 1-2], and (2) an Erie Personal Catastrophe Liability Insurance Policy, Policy No. Q50-5500234 ("PCL Policy") [ECF No. 1-3]. On or about February 22, 2017, Mr. Wellford provided Erie notice of the underlying lawsuit through written communication with his insurance agent. Aff. Erie Ins. Prop. & Cas. Co. 1–2 [ECF No. 13]. Erie investigated Mr. Wellford's claim, determined no coverage existed for

the underlying lawsuit under either policy, and issued a denial dated April 27, 2017. *Id.* at 4–12.

On May 18, 2017, Erie filed this declaratory judgment action against Mr. Wellford pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Pet. Declaratory J. Erie seeks four declarations: (1) the HomeProtector Policy does not provide coverage for the Underlying Lawsuit, (2) Erie has no duty to defend or indemnify Mr. Wellford under the HomeProtector Policy in the Underlying Lawsuit, (3) the PCL Policy does not provide coverage for the Underlying Lawsuit, (4) Erie has no duty to defend or indemnify Mr. Wellford under the PCL Policy in the Underlying Lawsuit. *Id.* at 13–14.

Mr. Wellford was personally served the summons on June 10, 2017. Summons [ECF No. 4]. He has not made an appearance in this action. On July 7, 2017, the Clerk entered default. Clerk's Entry Default [ECF No. 7]. On December 29, 2017, Erie filed a Motion for Summary Judgment [ECF No. 10].

### III.  Legal Standard

Because the Clerk has entered default, the court's authority to enter judgment against the defendant is properly characterized as the power to enter default judgment. *See United Fin. Cas. Co. v. Milton Hardware, LLC*, No. 3:17-2002, 2018 WL 2207130, at *1 (S.D. W. Va. May 14, 2018). Therefore, the court will construe the motion as one for default judgment, not summary judgment.

After default is entered by the clerk, a party may move the court for default judgment under Rule 55(b). Indeed, applying to the court for default judgment is

necessary where, as here, the plaintiff's claim is not for a sum certain or made certain by computation. Fed. R. Civ. P. 55(b). Upon default, all of the well-pleaded facts alleged in the complaint as to liability may be taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments . . . ." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted). The court, however, must not enter default judgment that "differ[s] in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

I have previously explained that:

> [a]s a general principle, this court is wary of entering default judgment in a suit for declaratory relief. By nature, a declaratory judgment action is jurisdictionally unique. I am uncomfortable with the idea of providing declaratory relief where the merits of a case have not been fully litigated. *See* Restatement 2d Judgment § 33 (stating that a court "should not make a declaration upon default on the basis of the pleadings alone but should require the plaintiff to present enough evidence to warrant the granting of declaratory relief").

> My concern about entering declaratory judgment by default is particularly pronounced in insurance disputes. When a declaratory judgment action is brought by an insurance carrier, the suit may influence the way courts later interpret other identical policies. I do not believe that an individual insured's failure to respond in a given action is sufficient justification for a declaration that may later affect non-party policy holders.

4

*Teachers Ins. Co. v. Prather*, No. 2:11-cv-397, 2012 WL 90095, at *2 (S.D. W. Va. Jan. 11, 2012).

IV. Discussion

Erie argues that the "business pursuits exclusion" under both policies excludes the underlying lawsuit from coverage. Mem. Law Supp. Pet'r's Mot. Summ. J [ECF No. 11]. "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 715 (W. Va. 1970). "[D]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Tennant v. Smallwood*, 568 S.E.2d 10, 13 (W. Va. 2002). Under West Virginia law, "included in the consideration of whether an insurer has a duty to defend is whether the allegations in the [underlying] complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 486 (W. Va. 2004) (citations omitted).

"An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain and clear, placing them in such a fashion as to make obvious their relationship to other policy terms . . . ." *Satterfield v. Erie Ins. Prop. & Cas.*, 618 S.E.2d 483, 487 (W. Va. 2005). The business pursuits exclusion is "a standard feature of homeowner's insurance policies. It is intended as a limitation upon the comprehensive personal

5

liability coverage provided in such policies." *Camden Fire Ins. Ass'n v. Johnson*, 294 S.E.2d 116, 117 (W. Va. 1982). The term business pursuits, "when used in a clause of an insurance policy excluding from personal liability coverage injuries 'arising out of business pursuits of any insured', contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood." *Id.* at 119.

The HomeProtector Policy states, "**We** do not cover . . . **Bodily injury**, **property damage** or **personal injury** arising out of **business** pursuits of **anyone we protect**." HomeProtector Policy 25. The HomeProtector Policy defines business as "any full-time, part-time or occasional activity engaged in as a trade, profession or occupation, including farming." *Id.* at 12. The PCL Policy states, "**We** do not cover **personal injury** or **property damage** arising out of **business** pursuits or **business property** of **anyone we protect**." PCL Policy 10–11. The PCL Policy defines business as "any activity engaged in as a trade, profession or occupation, other than farming." *Id.* at 9.

In their complaint, the Carters' allege that Mr. "Wellford was acting as an agent and/or apparent agent for both [] Corotoman and [] [Yeager] Airport" when he ordered that their home be demolished. Underlying Compl. ¶ 4. They offer two alternative theories for his order. First, they allege that Mr. Wellford entered into a consulting agreement with Yeager Airport to assist with the EMAS collapse, and acting pursuant to this agreement, Mr. Wellford ordered that their house be demolished because Yeager Airport incorrectly believed it had previously purchased the house. *Id.* ¶¶ 73, 82. Alternatively, the Carters' allege that Mr. Wellford directed

6

the demolition of their house as an agent of Corotoman, so that Corotoman could later obtain the property through the legal process of condemnation. *Id.* ¶¶ 86–90.

Under either set of facts, the demolition occurred as a part of a business pursuit by Mr. Wellford, as defined in the HomeProtector Policy and the PCL Policy. Therefore, neither policy provides coverage for Mr. Wellford in the underlying lawsuit, and Erie does not have a duty to defend or indemnify Mr. Wellford in the underlying lawsuit.

## V. Conclusion

For the reasons stated herein, the plaintiff's Motion for Summary Judgment [ECF No. 10], which the court is construing as a motion for default judgment, is **GRANTED**. It is hereby **DECLARED** that:

    1. The HomeProtector Policy does not provide coverage for Mr. Wellford in the underlying lawsuit;

    2. Erie does not have a duty to defend or indemnify Mr. Wellford in the underlying lawsuit pursuant to the HomeProtector Policy;

    3. The PCL Policy does not provide coverage for Mr. Wellford in the underlying lawsuit; and

    4. Erie does not have a duty to defend or indemnify Mr. Wellford in the underlying lawsuit pursuant to the PCL Policy.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                        ENTER:    July 31, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE